## COLLISION OF TEAM WITH ELECTRIC CAR AT STREET CROSSING.

Circuit Court of Cuyahoga County.

THE CLEVELAND ELECTRIC RAILWAY COMPANY v. EDWARD J. KENNA.*

Decided, November 11, 1905.

*Negligence—Only Reasonable Action Required in Escaping from Situation of Danger.*

After one had been placed in a situation of danger through the negligence of another, he is only required to do that which a reasonably prudent man under like circumstances would do in escaping from the danger, and in doing it he is not guilty of contributory negligence, even though it may not have been the wisest course to pursue.

*Squire, Sanders & Dempsey,* for plaintiff.
*L. A. Russell,* contra.

MARVIN, J. (orally); WINCH, J., and HENRY, J., concur.

This is a proceeding in error. The parties here are the reverse of what they were in the court of common pleas, but they are here spoken of as they were in that court.

On the 7th of September, 1903, about 6 o'clock A. M., plaintiff was driving a span of horses harnessed to a wagon loaded with bread, which he was delivering to families who were his customers in the city of Cleveland. When driving to the west on Astor avenue he approached Dunham avenue, which runs north and south at right angles with Astor avenue, his intention being to turn to the south on Dunham.

The defendant owns and operates a street railroad on Dunham, and to drive to the south on Dunham on the right-hand of the tracks of the railroad it was necessary that he cross over these tracks from the east side where he would reach them as

*Affirmed without opinion, *Cleveland Electric Railway Co.* v. *Kenna,* 75 Ohio State, 625.

he came out from Astor, to the west side. In an attempt to do this his wagon was struck by a car of the defendant running to the north, and the plaintiff was thrown from his wagon and injured. He sued the defendant in the court of common pleas to recover damages for such injuries. The result of the trial was a verdict and judgment for the plaintiff in the sum of $3,000. To reverse this judgment the present proceeding is prosecuted. It is claimed that there were numerous errors to the prejudice of the defendant during the progress of the trial which should cause this court to reverse the judgment.

The plaintiff in his petition charged that the defendant was negligent in running its cars at a high rate of speed, to-wit, 25 to 30 miles an hour, and in violation of the ordinances of the city of Cleveland regulating the speed of such cars; that the defendant failed to give any signal of the approach of its car to Astor avenue, as required by the ordinance of the city, and without applying any brake to retard the speed of such car as it was approaching Astor avenue, all in violation of its duty to exercise ordinary care to avoid accident and injury to persons and property.

The defendant by its answer denied that plaintiff was injured by it, and averred that if he was injured, his own negligence contributed to his injury.

A bill of exceptions is filed in this court, containing all the evidence offered on the trial below.

On the trial the plaintiff testified that he was familiar with the place where the accident occurred, had been accustomed to drive there for a long time; that there was a building on the southeast corner of Astor and Dunham coming clear up to the line of each street at the corner; that there were trees along the east side of Dunham, south of Astor, and that by reason of such building and trees his view along Dunham was so obstructed that he could not see a car approaching from the south until he was within a short distance of the railroad tracks; that he was upon the seat of his wagon, and though it was a covered wagon, there was nothing about the wagon to interfere with his view on either side, but only at his back; that his seat was about fifteen feet

back from the heads of his horses, and that before he was far enough to the west to see a car coming from the south, his horses' heads were over the east rail and their front feet either close up to or over the rail; that just before he got to Dunham he checked up his team and listened, but heard no bell or car; that he drove forward and when he got to where he could see, he saw a car coming rapidly from the south. His horses were on the track, and he hurried them by slapping the lines upon them, trying to get across before the car should reach them. He also testified that the car was approaching at from 25 to 30 miles an hour; that when he first saw the car the motorman was looking down and not toward the front; that the car struck the rear part of his wagon; that he was thrown out and injured.

William Kuppy was examined as a witness on the part of the plaintiff. He saw the accident. He was on Dunham avenue and about twenty feet south of Astor. The car passed him before the collision. He says no bell was sounded or other signal given. He says the car was going fast, but will not undertake to say how fast. He says the car ran one hundred feet after the accident before it stopped.

Remie Rich saw the car just before it struck plaintiff's wagon. He thinks it was going 25 or 30 miles an hour. No bell or other alarm was sounded.

It was admitted by the defendant that the maximum rate of speed allowed by the ordinance at the time of this accident was twelve miles an hour. The ordinance of the city required a bell or gong to be sounded one hundred feet from street intersections and to be continually sounded while passing the same, and that ordinance required the person in charge of each car to keep a vigilant watch for all teams or persons on the track.

At the close of plaintiff's evidence defendant moved the court to direct the jury to return a verdict for defendant. This motion was overruled, and it is claimed that there was error in that ruling.

It is urged that the plaintiff was clearly negligent in driving on when he saw the car, and that he could have avoided the accident by at once turning his team. It may be true that he

could have turned the team so as avoid the accident. It may be true that he did not pursue the wisest course that could have been pursued; he was only required to do that thing which a reasonable man under the circumstances would do, and this is not necessarily to do that which on the whole, upon an examination afterward, might have turned out to be the wisest thing to do under the circumstances. He should do that which one of ordinary prudence would deem under the circumstances to be the wisest thing to do. There was no error in refusing to direct a verdict for the defendant nor any error in refusing to grant a motion for a new trial on the ground that the verdict was against and not supported by the evidence.

If the jury believed the evidence offered by plaintiff, it was justified in finding negligence on the part of the defendant and that plaintiff did not contribute to his injury by his own negligence.

It is urged that the court erred in refusing to charge the jury, as requested by the defendant, the following:

"If the plaintiff voluntarily left the east side of the street and drove onto the track at a rapid trot, when the car was only ninety feet away, there can be no recovery in this case and you should return a verdict for the defendant."

If this had been given the jury might have found that the defendant was guilty of all the negligence complained of; that the plaintiff checked up or stopped his team just before he reached Dunham avenue; that he listened for a signal and heard none; that he then drove forward until his horses had actually reached the track before he could see a car; that, then seeing the car approaching rapidly, he, in the exercise of the best judgment he could exercise in that perilous position, urged his horses into a rapid trot across the track, as in his judgment being more likely to save him from accident than to try to back or turn them, and yet that he could not recover. This surely is not the law and ought not to be the law. There was no error in refusing this charge.

It is complained that the court erred in giving the following charge to the jury:

"The plaintiff complains that the defendant was guilty of negligence in that it did not give the signals required by the ordinances; that they violated the speed allowed by the ordinances. The ordinances of the city, it is agreed, require that the speed at that place shall not exceed twelve miles an hour, and the ordinances also require that signals shall be given at all crossings and 100 feet before coming to them. Of course, it is no element in this case whether the ordinances were violated or not, unless that violation contributed to the injury. All must see that that is true. A motorman, for instance, might not have given signals, or might have been running at an unnecessary speed a little this side of where the accident happened, and might have subjected himself to arrest and punishment for violating the ordinances, but that could have no bearing on this case. So the question whether or not he was running at too high a rate of speed, at a higher rate of speed than twelve miles an hour, whether he gave or did not give signals, is important only if the exceeding rate or not giving the signal contributed in any way to this accident. The plaintiff did have a right to assume that that car would be run according to city rules and laws, if I may use those terms. The plaintiff had a right to assume that the car would not run over twelve miles an hour, and he had a right to assume that the signals required would be given; that is, until his senses discovered that there was a violation and that he would have to act in accordance with the conditions that there existed. For instance, he says that the car was running at thirty miles an hour. From the moment that he saw that and knew that or ought to have known that it was running at that high rate of speed, he must act in accordance with that high rate of speed.

"Now, it is upon the plaintiff to establish by a preponderance of the evidence, by the greater weight of evidence, that this accident was caused by the negligence of the defendant, by the failure of the defendant's agent or agents to exercise ordinary car under those circumstances."

It is said this language was in effect to say that the violation of the ordinance as to speed and the violation of the ordinance as to giving the alarm each constituted negligence *per se*. We do not so understand the language, nor do we think the jury were likely to so understand the language used. There was no error in that part of the charge.

Error is also claimed in the giving of the following to the jury:

"If it be true that the plaintiff without his fault was in a place of danger, then he should only be required to exercise ordinary carefulness to get out of that danger, then, though his acts as determined by subsequent consideration were not of the wisest at that time and place, that would not determine his rights. For instance, it has often happened that in a railroad collision or in some other position of danger, people have jumped out of vehicles or something of that kind and have been injured, whereas, if they had remained in the vehicle they would not have been hurt, as shown by that fact; but the law only requires that there, as everywhere, that one come up to the ordinary standard of human prudence. You can see that must be a reasonable test, and that all that is required of the plaintiff; if in a position of danger he is only required to exercise ordinary prudence under those circumstances."

It is complained that this is misleading; that to illustrate by the case of a railroad passenger, to whom the highest degree of care is due, is calculated to impress the jury with the idea that the same degree of care was due to the plaintiff in this case. The criticism is not sound. The court was using the illustration to show that one finding himself suddenly in a place of danger by an unforeseen emergency, for which he was not in fault, was not required to do more than one of ordinary prudence and care, under the same circumstances, would do. The illustration was apt and was not misleading.

Other complaints as to the charge are made, but we find none of them well founded.

Complaint is made that the verdict was for too much. We have examined the record and we find that the plaintiff was a young man in the best of physical health, and seemed to be a man of extraordinarily fine physical manhood—that as the result of this accident, apparently, certainly immediately following this accident, he suffered greatly. His right shoulder is considerably shrunken. It is true that one of the medical men testified after the accident, that he found that his left shoulder was injured. The evidence is such that we are not prepared to say that the jury must have been influenced by passion or prejudice to have brought in the verdict that they did. That being true, we find no error in this record that would justify a reversal, and the judgment of the court of common pleas is affirmed.